DECISION IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION.
{¶ 1} Relator, Roberta J. Solley, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court deny relator's request for a writ of mandamus. Relator does not object to the magistrate's findings of fact, but she has filed objections challenging the magistrate's conclusions of law. Because relator has filed objections to the magistrate's decision, the matter is now before this court for a full, independent review.
 {¶ 3} Relator essentially sets forth two objections to the magistrate's decision. First, relator argues that it was error for the magistrate to recommend the denial of the requested writ because the magistrate erroneously imposed an additional burden on relator by requiring her to "police the procedural processes of the Industrial Commission." Second, relator contends that the magistrate incorrectly interpreted Ohio Adm. Code 4121-3-34(C)(7).
 {¶ 4} To be entitled to a writ of mandamus, relator must show (1) a clear legal right to the relief requested; (2) respondent is under a clear legal duty to perform the act sought; and (3) relator has no plain and adequate remedy at law. State ex rel. Fain v. Summit Cty. AdultProbation Dept. (1995), 71 Ohio St.3d 658, citing State ex. rel. Howardv. Ferreri (1994), 70 Ohio St.3d 587, 589.
 {¶ 5} "In matters involving the Industrial Commission, the determinative question is whether relator has a clear legal right to relief. Such a right is established where it is shown that the commission abused its discretion by entering an order which is not supported by any evidence in the record." State ex rel. Valley PontiacCo., Inc. v. Indus. Comm. (1991), 71 Ohio App.3d 388, 391, citingState ex rel Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, "where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is inappropriate." Valley Pontiac Co., Inc., at 391, citing State ex rel.Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 6} Additionally, it is well-settled law that issues not administratively raised when there was an opportunity to do so cannot be raised in mandamus. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78.
 {¶ 7} Relator's objections both concern the magistrate's analysis of whether relator is precluded in mandamus from objecting to the claim allowances for which Jess G. Bond, M.D., examined. Dr. Bond, who specializes in occupational medicine, examined relator, at the request of the commission. The record indicates that Dr. Bond's report was mailed to relator's representative on March 24, 2005. A review of Dr. Bond's report reveals that Dr. Bond did not examine for all the physical claim allowances. Additionally, on March 31, 2005, the Akron hearing administrator sent a letter to the parties informing them of the right to request a prehearing conference. Relator's counsel acknowledged receipt of the letter from the hearing administrator and stated an intent to submit additional vocational information in support of the application. However, relator did not request a prehearing conference. Following a June 9, 2005 hearing, the staff hearing officer ("SHO") denied relator's PTD application. The SHO's decision to deny relator PTD compensation was based on Dr. Bond's report, psychologist Dr. Steven B. Van Auken's report, andthe SHO's assessment of relator'snon-medical disability factors. In this mandamus action, relator has argued that Dr. Bond did not examine for all the physical allowances in the claim, and, therefore, the commission abused its discretion by relying upon Dr. Bond's report.
 {¶ 8} The magistrate correctly determined that Dr. Bond did not examine for all the physical claim allowances and that that failure "does not automatically result in an abuse of discretion by the commission." (Magistrate's decision, at 13, Appendix A, at ¶ 49.) The magistrate accordingly analyzed the issue of whether the commission's reliance upon Dr. Bond's report constitutes an abuse of discretion because Dr. Bond did not examine for all the allowed conditions of the claim.
 {¶ 9} In his decision, the magistrate determined that, under Ohio Adm. Code 4121-3-34(C)(7), relator had an obligation to timely review Dr. Bond's report upon receipt and notify the appropriate hearing administrator of any problems in the processing of the PTD application. As to the procedure for the processing of applications for PTD, Ohio Adm. Code 4121-3-34(C) provides, in part, as follows:
 (7) If the employer or the injured worker request, for good cause shown, that a pre-hearing conference be scheduled, a pre-hearing conference shall be set. The request for a pre-hearing conference shall include the identification of the issues that the requesting party desires to be considered at the pre-hearing conference.
 The hearing administrator may also schedule a pre-hearing conference when deemed necessary on any matter concerning the processing of an application for permanent and total disability[.]
 * * *
 (8) Should a pre-hearing conference be held, the hearing administrator is not limited to the consideration of the issues set forth in paragraphs (C)(8)(a) through (C)(8)(i) of this rule, but may also address any other matter concerning the processing of an application for permanent total disability. At a pre-hearing conference the parties should be prepared to discuss the following issues:
 * * *
 (f) Agreement as to allowed condition(s) in the claim.
 {¶ 10} The magistrate reasoned that the commission's failure to examine for all the allowed conditions, upon which relator was premising her PTD application, would constitute a problem that should have been brought to the attention of the hearing administrator. The magistrate concluded that because relator did not administratively raise the issue, she is precluded in mandamus from objecting to the claim allowances for which Dr. Bond examined.
 {¶ 11} Relator acknowledges that it is her burden to prove that she is unable to perform sustained remunerative employment in order to be eligible for PTD. However, according to relator, the magistrate imposed an additional burden on her by requiring her to correct errors of the commission. Relator argues that such a requirement absolves the commission of its duty of insuring proper proceedings. Relator also argues that it cannot be a PTD applicant's responsibility to insure thepropriety of a medical exam performed at the request of the commission. In response, the commission argues that relator had the opportunity to administratively raise the issue of Dr. Bond's omission, and her failure in so doing precludes her from now raising it in this mandamus action.
 {¶ 12} We agree with the reasoning of the commission and the magistrate. Dr. Bond's report, upon which the commission ultimately relied, was based upon an examination that did not include all the physical claim allowances. Dr. Bond's report was sent to relator before the SHO hearing and relator was provided the opportunity to request a prehearing conference, pursuant to Ohio Adm. Code 4121-3-34(C)(7), where the issue of Dr. Bond's failure to examine for all the physical claim allowances could have been addressed. However, relator did not request a prehearing conference. Therefore, because relator did not administratively raise the issue despite the opportunity to do so, she is precluded from raising the issue in this mandamus action.
 {¶ 13} Accordingly, we find relator's objections to be without merit.
 {¶ 14} Following our independent review of this matter, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Thus, we overrule relator's objections, and adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
FRENCH and McGRATH, JJ., concur.
 APPENDIX A
Rendered on December 22, 2005.
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 15} In this original action, relator, Roberta J. Solley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 16} 1. On March 2, 1989, relator sustained an industrial injury while employed as a photographer for respondent PCA International, Inc., a state-fund employer. On that date, she lost her balance trying to avoid stepping on a child. She twisted her body but did not fall.
 {¶ 17} 2. On a C-1 application for payment of compensation signed by relator on April 24, 1989, relator described the injury as "muscle sprain[;] [right] side of neck down to hip." The employer fully certified the industrial claim.
 {¶ 18} 3. The record contains a November 22, 1991 order of a claims examiner of the Ohio Bureau of Workers' Compensation ("bureau"). The order states that the claim was previously allowed for "strain cervical spine 847.0[,] lumbosacral spine strain 846.0, sprain right shoulder 840.9, sprain right hip 843.9." The order further states that the claim is additionally allowed for "herniated disc L5-S1 722.10."
 {¶ 19} 4. The record contains an August 27, 1998 order of a district hearing officer ("DHO") finding that the claim is additionally allowed for "major depressive disorder, single episode, severe without psychotic features (296.23)." The DHO's order also recites that the claim has been previously allowed for "strain of the cervical spine, lumbosacral spine, right shoulder, and right hip; herniated disc L5-S1."
 {¶ 20} 5. The record contains a December 3, 2003 order of a staff hearing officer ("SHO") that additionally allows the claim for "right lateral epicondylitis." The first paragraph of the order recites: "This claim has been previously allowed for: Lumbar disc displacement L5-S1; lumbar sprain; lumbosacral sprain; cervical sprain; sprain right shoulder/arm; sprain right hip/thigh; depressive psychosis severe."
 {¶ 21} 6. On January 26, 2005, relator filed an application for PTD compensation.
 {¶ 22} 7. Under the "Education" section of the PTD application, relator stated that she graduated from high school in 1980. Among the information requested, the application form posed three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," relator selected the "yes" response to all three queries.
 {¶ 23} 8. Under the "Work History" section of the PTD application, relator indicated that she was employed as a photographer from 1984 to 1990. She described her basic duties as: "Took pictures of children; picture (occasional) sales; drove to various job sites (one week at a time); set up camera equipment."
 {¶ 24} No other employment was indicated on the PTD application.
 {¶ 25} 9. In support of her PTD application, relator submitted a report dated September 23, 2004, from her attending physician, John G. Wassil, III, M.D. The report states:
 * * * I have reviewed the allowed conditions of the claim, including cervical and lumbosacral strain, right shoulder sprain, right hip sprain, herniated disc at L5-S1, major depressive disorder and right lateral epicondylitis.
 I initially saw Ms. Solley on September 9, 2001[.] * * * Since that visit with the patient, I have seen her on a regular basis, approximately every 4-6 weeks. * * *
 Based upon the above, I feel Ms. Solley is permanently and totally disabled based solely on the allowed conditions of the claim named above. The patient could not return to her former position of employment and I do not feel she is capable of sustaining any type of remunerative employment based upon the allowed conditions of the claim and based upon prior job experience, educational level and functional capabilities. * * *
 {¶ 26} 10. Relator also submitted six of Dr. Wassil's office notes dated February 2, August 6, October 8, November 5, November 30, 2004 and January 14, 2005. The January 14, 2005 office note states:
 * * * Routine follow-up visit for me with Roberta. She notes that her right shoulder has been bothering her quite a bit lately, and occasionally it starts over to the left side after crossing the neck[.] She usually uses her cane in her right hand and the right shoulder flared, and occasionally she switches the cane to the left[.] She feels this is the reason why both sides are flared up a bit. She continues to have persistent, chronic, deep, achey pain in the neck, shoulder girdle and low back[.] The location and quality of these symptoms are unchanged[.] Severity is a bit worse because of the time of year, but there have been no specific problems lately, including no falls and no traumas[.] Neurologic status continues to remain relatively stable[.] She does report having persistent symptoms of depression, which she has not broken out of yet and as a matter of fact, if anything these symptoms are worse[.]
 * * *
 PHYSICAL EXAMINATION: Musculoskeletal, the patient has moderate tenderness in the cervical and lumbar paraspinals with an increase in trigger points in the right neck and shoulder girdle[.] Hawkins impingement test is strongly positive on the right and negative on the left. Range of motion of the joints of the arms and legs is full, except for the right shoulder, which the patient forward flexes and abducts actively to only 90° with moderate limitations of internal rotation. The patient continues to have moderate tenderness in the lumbar paraspinals, as well[.]
 * * *
IMPRESSIONS:
 1[.] Cervical/lumbosacral sprain[.]
 2[.] Right shoulder sprain.
 3. Right hip sprain.
 4[.] L5-S1 disc displacement[.]
 5[.] Major depression[.]
 6[.] Right lateral epicondylitis.
 {¶ 27} 11. On March 21, 2005, at the commission's request, relator was examined by Jess G. Bond, M.D., who specializes in occupational medicine. Dr. Bond reported:
 Allowances: Strain on the cervical spine and lumbosacral spine right herniated disc L5-S1; right lateral epicondylitis[.]
 * * *
 Ms. Solley, a 43-year-old woman, was examined by me on the date noted above concerning the chief complaint of neck pain, right shoulder pain, and back pain.
 * * *
 Discussion
 On examination Roberta J. Solley has some limitation of movement at the cervical and lumbar spine with no findings of an upper extremity radiculopathy, and with some minor findings of a right lower extremity radiculopathy. There were no objective findings on examination of right lateral epicon-dylitis. All of her right upper extremity complaints were limited to her right shoulder.
 Opinion
 1) Based solely on consideration of the allowed condition(s) within my speciality, and with regard to each specified allowed condition(s), it is my medical opinion that Roberta J. Solley has reached maximum medical improvement.
 2) Based solely on consideration of the allowed condition(s) within my specialty, the objective findings at the time of examination, and the AMA's Guide to the Evaluation of Permanent Impairment, Fourth edition, it is my estimation of permanent partial impairment percentage for:
 The claim allowances: Strain on the cervical spine and lumbosacral spine right herniated disc L5-S1; right lateral epicondylitis[.]
 The Injury Model utilizing Diagnosis-Related-Estimates (DRE) for the cervicothoracic spine (page 104), Category (II), which equated to a whole person permanent partial impairment of 5%, and
 The Range of Motion Model at the right elbow, utilizing active range of motion measurements: elbow flexion/extension (figure 32, page 40), and supination/pronation (figure 35, page 41), which equated to a whole person permanent partial impairment of 0%, and
 The Injury Model utilizing Diagnosis-Related-Estimates (DRE) for the lumbosacral spine (page 102), Category (III), which equated to a whole person permanent partial impairment of 10%.
 The above whole person permanent partial impairment percentages were combined (using the Combined Values Chart) to determine a whole person impairment rating of: 15%[.]
 3) Based solely on consideration of the allowed condition(s) within my speciality [sic], the Physical Strength Rating Estimate form has been completed (please see enclosed form).
 {¶ 28} 12. On a physical strength rating form dated March 21, 2005, Dr. Bond indicated that relator could perform "light work."
 {¶ 29} 13. On March 15, 2005, at the commission's request, relator was examined by psychologist Steven B. Van Auken, Ph.D. Dr. Van Auken indicated in his report that the claim was allowed for "major depressive disorder, single episode severe without psychotic features." Dr. Van Auken reported:
 (1) Has the injured worker reached MMI [maximum medical improvement]?
 Yes, it is found here that in regard to her allowed condition ("major depressive disorder, single episode severe without psychotic features"), she has reached MMI. It has been 16 years since her injury. During this period of time, she has sought anti-depressant medication from her physician, but she has not sought care from a mental health provider, in spite of having been in contact with mental health providers through the evaluation process, and presumably through conversation with her physicians. At this point, it appears clear that she does not intend to pursue mental health care. Therefore, we conclude that she has reached MMI in regard to her major depressive disorder (which, in the opinion of this examiner, would be better described at this point as being "moderate" in nature rather than "severe").
 {¶ 30} 14. Dr. Van Auken estimated that relator has a 15 percent whole body impairment attributable to "her allowed condition of `major depressive disorder, severe without psychotic features.' "
 {¶ 31} 15. On an occupational activity assessment form dated March 29, 2005, Dr. Van Auken wrote:
 In and of themselves, Ms. Solley's depressive symptoms — including diminished concentration and diminished energy generally, as well as diminished stress tolerance — would prevent her from succeeding in her former job of manager / photographer. They would not be of sufficient severity as to preclude all other forms of employment.
 {¶ 32} 16. In support of her PTD application, relator submitted a vocational report dated April 21, 2005, from Mark A. Anderson. The Anderson report states:
 * * * She also demonstrated poor manual dexterity abilities in regards to the Purdue Pegboard. Her math aptitude placed at the 4th
Grade Level while her reading aptitude placed at the mid-4th Grade Level. Her SRA Clerical aptitude placed below the 1st percentile.
 {¶ 33} In his report, Anderson concludes:
 * * * [I]t is my opinion that Ms. Roberta Solley has no return to work potential. An analysis of the local labor market revealed no occupations which match all of Ms. Roberta Solley's restrictions. The medical reports and testing indicate that Ms. Solley is capable of performing less than the full range of sedentary activities.
 {¶ 34} 17. Following a June 9, 2005 hearing, an SHO issued an order denying relator's PTD application. The SHO's order of June 9, 2005, states:
 The injured worker is a forty-three year old former photographer who was injured on March 2, 1989 when she tried to avoid stepping on a child that was standing near her and lost her balance. The Bureau of Workers' Compensation has recognized this claim for strain of the cervical spine, strain of the lumbosacral spine, right herniated disc L5-S1, major depressive disorder, single episode severe without psychotic features, and right lateral epicondylitis. The injured worker has received physical therapy and medication for her allowed physical conditions. The injured worker indicates that she was never treated by a psychologist or psychiatrist for her major depression. She indicates that the prescriptions for her major depression have been provided by her family doctor.
 Immediately following the accident the injured worker was off of work for three months. She returned to work in June of 1989 and worked until April of 1990. After she quit work in 1990 she has never returned to work. It is the injured worker's contention that the allowed conditions in this claim prevent her from performing any sustained remunerative employment.
 The Staff Hearing Officer finds that the injured worker is able to engage in sustained remunerative employment; therefore, the injured worker is not permanently and totally disabled. The Staff Hearing Officer's decision is based on Dr. Bond's March 21, 2005 report and Dr. Van Auken's March 25, 2005 report as well as the Staff Hearing Officer's assessment of the injured worker's non-medical disability factors.
 Dr. Bond performed an orthopedic examination of the injured worker at the Industrial Commission's request. Based on his examination, Dr. Bond found that the injured worker had some limitation of movement of the cervical and lumbar spine, as well as some minor right lower extremity radiculopathy. There were no objective findings noted with respect to the allowed lateral epicondylitis. Dr. Bond opined that the allowed conditions had reached maximum medical improvement, and that they would limit the injured worker to performing light duty work.
 Dr. Van Auken evaluated the injured worker to determine her impairment from her allowed psychological conditions. Based on his examination he found the injured worker's diminished concentration, energy and stress tolerance would prevent her from returning to her former position of employment as a manager/photographer. However, the depressive symptoms would not prevent the injured worker from returning to other forms of employment.
 Based upon the reports of Dr. Bond and Dr. Van Auken, the Staff Hearing Officer finds that the injured worker is physically and psychologically capable of performing light-duty work.
 According to Ohio Administrative Code Section 4121-3-34(B)(2)(d):
 Light work means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated right [sic] work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
 Although the injured worker retains the physical ability to engage in some work activity, permanent total disability may never be denied based upon physical ability to engage in sustained remunerative employment without considering the non-medical disability factors of age, education, and past work history. State ex rel. Stephenson v. Indus. Comm.
31 Ohio St. 3rd 161 (1987). Therefore, the Staff Hearing Officer will evaluate what effect the aforementioned non-medical disability factors have on the injured worker's ability to work.
 The injured worker is a forty-three year old high school graduate who is able to read, write and do basic math. After the injured worker graduated from high school she went to live with her grandparents so that she could care for them. The injured worker stayed with the grandparents for four years. In 1984, the injured worker began working as a photographer. The injured worker's employment lasted for six years. The injured worker obtained her training on the job. Her job duties consisted of traveling to various locations and photographing children.
 The Staff Hearing Officer notes that the injured worker is only forty-three years old and she has a high school education. There is no persuasive evidence in file that shows that the injured worker is unable to be retrained to perform entry-level light duty work. The evidence in file shows that the injured worker has only had one job in her life and has done nothing to retrain herself for any other type of employment. Surely her current level of education would be sufficient to enable her to successfully complete any training necessary to engage in entry-level light duty work. In addition the injured worker's young age would make retraining feasible. The fact that the injured worker has such a limited work history is not a negative disability factor because the injured worker has the ability to be retrained. Therefore, her limited work history and lack of transferable skills does not bar employment.
 Permanent total disability is an award that is paid to an injured worker who is unable to engage in any sustained remunerative employment. If the evidence shows that an injured worker may be employed using his current skills or skill[s] that may reasonably be obtained, then the injured worker is not permanently and totally disabled. In this case the evidence shows that the injured worker's high school education and her young age will permit her to be retrained to perform entry-level light duty work. Therefore, the Staff Hearing Officer finds that the injured worker is not permanently and totally disabled.
 {¶ 35} 18. On July 11, 2005, relator, Roberta Solley, filed this mandamus action.
Conclusions of Law:
 {¶ 36} Several issues are presented: (1) What are the allowed conditions of the claim? (2) Did Dr. Van Auken, upon whom the commission relied, examine for the correct psychiatric/psychological condition allowed in the claim? (3) Did Dr. Bond examine for all the physical allowances in the claim? (4) If Dr. Bond failed to examine for all the physical allowances in the claim, did the commission abuse its discretion by relying upon a physician who examined for less than all the allowed physical conditions of the claim? (5) Did the commission abuse its discretion in its analysis of the nonmedical factors.
 {¶ 37} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 38} Turning to the first issue, R.C. 4121.36(B)(4) provides that every decision of an SHO or DHO shall be in writing and contain a "[d]escription of the part of the body and nature of the disability recognized in the claim." Notwithstanding this statutory provision, sometimes written decisions contain errors in the listing of the allowed conditions of the industrial claim. Apparently, that situation has occurred on this industrial claim.
 {¶ 39} Where a question arises as to whether a hearing officer's order contains a correct listing of the claim allowances, a reference to the employer's initial claim certification and any subsequent orders adjudicating additional claim allowances is required.
 {¶ 40} Here, the parties, through counsel, have filed a supplemental stipulation of evidence that apparently contains the results of the parties' search of the claim file for the bureau and commission orders adjudicating additional claim allowances. Also relevant is relator's C-1 application for workers' compensation benefits which the employer fully certified on March 15, 1989.
 {¶ 41} Initially, in her brief filed in this action, relator takes the position that the SHO's order of December 3, 2003, correctly states all the allowed conditions in the claim. Clearly, there is no basis for relator's position, and at oral argument, relator's counsel seemed to agree.
 {¶ 42} As for the correct psychiatric/psychological claim allowance, there is no evidence in the record that this industrial claim was ever adjudicated for an additional allowance described as "depressive psychosis severe," as listed in the SHO's order of December 3, 2003. However, the DHO's order of August 27, 1998 (found in the supplemental stipulation), conclusively shows that the industrial claim is additionally allowed for "major depressive disorder, single episode, severe without psychotic features."
 {¶ 43} In light of the orders and the claim certification contained in the supplemental stipulation, it is clear that the SHO's order of June 9, 2005 (which denied the PTD application), contains errors in the listing of the physical conditions allowed in the claim.
 {¶ 44} The bureau undertakes the task of reducing the description in the claim certification to the appropriate ICD-9 codes. As previously noted, the employer fully certified the C-1 application which described the injury as "muscle sprain[;] [right] side of neck down to hip." The claims examiner's order of November 22, 1991, lists the previously allowed conditions as "strain cervical spine 847.0[,] lumbosacral spine strain 846.0, sprain right shoulder 840.9 sprain right hip 843.9."
 {¶ 45} The claims examiner's reduction of the C-1 description to ICD-9 codes appears to be consistent with the C-1's generalized description of a right side muscle sprain from the neck to the hip.
 {¶ 46} Given the claims examiner's order of November 22, 1991, the record, as supplemented, indicates that the SHO's order of June 9, 2005, fails to list all the allowed physical conditions of the claim. The SHO's order of June 9, 2005, fails to list the right shoulder sprain and right hip sprain.
 {¶ 47} Given the above analysis, the second issue is easily addressed. Contrary to relator's position here, Dr. Van Auken didexamine for the correct allowed psychiatric/- psychological condition of the claim. Relator is incorrect in arguing that the claim has been allowed for "depressive psychosis severe." Dr. Van Auken examined for the allowed condition "major depressive disorder, single episode severe without psychotic features." The commission could appropriately rely upon Dr. Van Auken's report.
 {¶ 48} The third issue is whether Dr. Bond examined for all the physical claim allowances in the claim. Parenthetically, Dr. Bond's listing of the physical claim allowances is identical to the listing contained in the SHO's order of June 9, 2005 which, as previously noted, fails to list all the physical claim allowances. Given the above-analysis, this magistrate must conclude that Dr. Bond did not examine relator for the right shoulder sprain or right hip sprain because those claim allowances are not listed as claim allowances in his report. Moreover, the right shoulder sprain and the right hip sprain are not considered in the "opinion" portion of Dr. Bond's report where he derives the whole person impairment rating.
 {¶ 49} However, that Dr. Bond failed to examine for all the physical claim allowances does not automatically result in an abuse of discretion by the commission.
 {¶ 50} The fourth issue is whether the commission's reliance upon Dr. Bond's report constitutes an abuse of discretion because Dr. Bond did not examine for all the allowed conditions of the claim.
 {¶ 51} Analysis begins with the observation that Dr. Wassil's September 23, 2004 report submitted in support of the PTD application does list "right shoulder sprain, right hip sprain," as among the allowed conditions being reviewed. In his September 23, 2004 report, Dr. Wassil opines that relator is not capable of sustained remunerative employment based upon the allowed conditions that he listed. Moreover, in his January 14, 2005 office note, Dr. Wassil noted that the "right shoulder has been bothering her quite a bit lately." Dr. Wassil appears to connect this observation with "right shoulder sprain." Thus, Dr. Bond's failure to examine for the right shoulder sprain is problematical given that relator claimed to be PTD based at least in part on the shoulder condition.
 {¶ 52} Furthermore, in his August 6, 2004 office note, Dr. Wassil notes that relator reports that her "hips have been bothering her a bit more lately." Thus, Dr. Bond's failure to examine for the right hip sprain is problematical.
 {¶ 53} According to respondent, even if Dr. Bond failed to examine for all the allowed conditions of the claim upon which relator had premised her application, relator cannot complain here of that failure because relator failed to request a prehearing conference with the commission's hearing administrator pursuant to Ohio Adm. Code 4121-3-34(C)(7) which states:
 If the employer or the injured worker request, for good cause shown, that a pre-hearing conference be scheduled, a pre-hearing conference shall be set. The request for a pre-hearing conference shall include the identification of the issues that the requesting party desires to be considered at the pre-hearing conference.
 The hearing administrator may also schedule a pre-hearing conference when deemed necessary on any matter concerning the processing of an application for permanent and total disability * * *.
 Ohio Adm. Code 4121-3-34(C)(8) states:
 Should a pre-hearing conference be held, the hearing administrator is not limited to the consideration of the issues set forth in paragraphs (C)(8)(a) to (C)(8)(i) of this rule, but may also address any other matter concerning the processing of an application for permanent total disability. At a pre-hearing conference the parties should be prepared to discuss the following issues:
 * * *
 (f) Agreement as to allowed condition(s) in the claim.
 {¶ 54} The record before this court discloses that the Akron hearing administrator ailed a letter to the parties on March 31, 2005, informing of the right to request a prehearing conference. The record also discloses that Dr. Bond's report was mailed to relator's representative on March 24, 2005. By letter dated April 5, 2005, relator's attorney acknowledged receipt of the letter of the Akron hearing administrator and notified the administrator of an intention to submit additional vocational information. However, the April 5, 2005 letter does not request a prehearing conference.
 {¶ 55} In the magistrate's view, under Ohio Adm. Code 4121-3-34(C)(7), relator had an obligation to timely review Dr. Bond's report upon receipt and to bring to the attention of the Akron hearing administrator any problems in the processing of the PTD application. Certainly, the commission's failure to examine for all the allowed conditions upon which relator was premising her PTD application would constitute a "matter concerning the processing" of the application within the meaning of Ohio Adm. Code 4121-3-34(C)(7).
 {¶ 56} Based on the foregoing analysis, the magistrate concludes that relator is precluded in mandamus from objecting to the claim allowances for which Dr. Bond examined. It is well-settled that issues not raised administratively cannot be raised in mandamus. State ex rel. QuartoMining Co. v. Foreman (1997), 79 Ohio St.3d 78.
 {¶ 57} The fifth issue is whether the commission abused its discretion in analyzing the nonmedical factors.
 {¶ 58} The commission is the expert on the nonmedical factors.State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271. The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary. Id.
 {¶ 59} Here, relator argues that the Anderson vocational report shows that her "intellectual abilities" and her "actual skills" fall below the appropriate skill level for a high school graduate. Relator suggests that the commission abused its discretion by failing to discount her high school education based upon the Anderson report or simply failed to consider the Anderson report. Relator's argument lacks merit.
 {¶ 60} While the commission was required to consider the Anderson report, there is no evidence that it failed to consider it. The absence of any mention of the report in the SHO's order is not, by itself, an indication that the commission failed to consider it. State ex rel.Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250. (There is a presumption of regularity that attaches to commission proceedings.) Here, the presumption is that the commission did not find the Anderson report credible. The commission thus determined that relator has a high school education.
 {¶ 61} The commission also found, based apparently on her own self-evaluation on the PTD application, that relator can read, write and do basic math. It was clearly within the commission's discretion to rely upon this evidence as a positive vocational factor. State ex rel. Westv. Indus. Comm. (1996), 74 Ohio St.3d 354.
 {¶ 62} Relator was only 43 years old at the time of her PTD hearing and she possesses a high school education. It was well within the commission's discretion to conclude that relator's age is a vocational advantage that will permit her to retrain and that her high school education is also a vocational asset. State ex rel. Ellis v. McGrawEdison Co. (1993), 66 Ohio St.3d 92.
 {¶ 63} Moreover, the commission explained how relator's limited work history as a photographer is not a negative factor because of her ability to be retrained. Given relator's high school education and her abilityto read, write and do basic math, it was clearly within the commission's discretion to find that relator had retraining potential.
 {¶ 64} Clearly, the commission's order complies with State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, in its analysis of the nonmedical factors.
 {¶ 65} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.